Josiah M. Prendergast, State Bar No. 292840
**WEINTRAUB TOBIN** CHEDIAK COLEMAN GRODIN
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, California 95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile
Email: jprendergast@weintraub.com

Attorneys for Plaintiff AAEON Electronics, Inc.

IN THE UNITED STATED DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AAEON Electronics, Inc., a New Jersey corporation, | Case No. 2:21-CV-04532-SVW-MRW |
| Plaintiff, | **AAEON Electronics, Inc.'s Opposition to Defendant's Motion to Dismiss or Transfer** |
| vs. | Date: August 23, 2021 |
| NEC Display Solutions of America, Inc., a Delaware corporation, | Time: 1:30 p.m. |
| | Judge: Hon. Stephen V. Wilson |
| Defendant. | Courtroom: 10D |

{3224054.DOCX:2}

1

## TABLE OF CONTENTS

*Page*

I. Introduction ................................................................................... 5

II. Summary of Pertinent Facts .................................................... 5

III. Law and Argument ...................................................................... 6

    A. The Court has specific jurisdiction over NEC because the agreement was negotiated in part in California and NEC required AAEON to perform in California, making it reasonably foreseeable the deal would have substantial economic consequence here. ...................................... 6

        1. NEC purposefully availed itself of the benefits and protections of California by requiring AAEON to perform in California and establishing operations in this state to deliver the AAEON components to the market.......................................................................7

        2. AAEON's claim is related to NEC's forum activities, and NEC cannot avoid jurisdiction by breaching the agreement and preventing AAEON's performance. ............................................... 10

        3. NEC has not met its burden of making a *compelling* case that this Court's exercise of jurisdiction would be unreasonable. .................... 11

    B. If the Court finds that AAEON has not made a prima facie showing that jurisdiction is proper, the Court should grant AAEON leave to conduct limited discovery on jurisdiction. ........................................... 14

    C. NEC's alternative request to transfer the action to the Northern District of Illinois should be denied because Illinois is not the contractually agreed upon forum and transfer is not warranted under the traditional section 1404 analysis. ......................................... 15

        1. NEC agreed to litigate any claims arising out of the Purchase Order in New Jersey and would be entitled to transfer the action to New Jersey, but NEC does not seek that relief............................ 15

        2. NEC has not carried its burden, under the traditional section 1404(a) analysis, to show that the balance of convenience strongly favors litigation in Illinois. ...................................................................... 17

    D. If the Court finds that it lacks jurisdiction over NEC, the Court should transfer the action to the District of New Jersey, where NEC contractually consented to jurisdiction. ................................................................. 19

IV. Conclusion .................................................................................19

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

## TABLE OF AUTHORITIES

*Page*

### *Federal Cases*

*Apex Construction v. Huron Manufacturing Corp.*,
    506 F. Supp. 20 (E.D. Wash. 1980) ..................................................... 9, 10

*Bacon v. Liberty Mut. Ins. Co.*,
    575 F.3d 781 (8th Cir. 2009) .................................................................. 19

*Brandon Apparel Group v. Quitman Mfg. Co.*,
    42 F.Supp.2d 821 (N.D. Ill. 1999) ......................................................... 17

*Bristol-Meyers Squibb v. Superior Court*,
    137 S. Ct. 1773 (2017)............................................................................ 10

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ............................................................................ 8, 11

*E.&J. Gallo Winery v. F. & P.S.p.A.*,
    899 F. Supp. 465 (E.D. Cal. 1994) .........................................................

*Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
    618 F.3d 1153 (10th Cir. 2010) ......................................................... 17, 18

*Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*,
    828 F.2d 1439 (9th Cir. 1987) .................................................................. 6

*Freestream Aircraft (Berm.) Ltd v. Aero Law Grp.*,
    905 F.3d 597 (9th Cir. 2018) ................................................................... 7

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
    141 S. Ct. 1017 (2021)............................................................... 8, 10, 17

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ................................................................................. 8

*Laub v. U.S. Dept. of Interior*,
    342 F.3d 1080 (9th Cir. 2003) ............................................................... 14

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007) .......................................................... 12, 13

*Roth v. Garcia Marquez*,
    942 F.2d 617 (9th Cir. 1991) ........................................... 8, 10, 11, 14

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................... 7

weintraub **tobin** chediak coleman grodin
LAW CORPORATION

*Page*

*Sinatra v. National Enquirer*,
   854 F.2d 1191 (9th Cir. 1988) ................................................... 7, 8, 13

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................ 8

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
   446 F.2d 406 (9th Cir. 1977) ........................................................... 14

<u>**State Statutes**</u>

UCC 2-204 .................................................................................................. 16

UCC 2-207 .................................................................................................. 16

<u>**Federal Statutes**</u>

28 U.S.C. § 1404(a) ...................................................................... 17, 18, 19

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

{3224054.DOCX:2}

4

## I. Introduction

The Court should deny the Motion to Dismiss because defendant NEC Display Solutions of America, Inc. ("NEC") unilaterally and purposefully directed this transaction to California, by requiring plaintiff AAEON Electronics, Inc. ("AAEON") to perform in California, by delivering manufacturing and delivering custom designed computer processing units to NEC's permanent facility in Rancho Dominquez, California. NEC has a heavy burden to show that it would be unreasonable for this Court to exercise jurisdiction, and NEC has not met that burden. NEC offers conclusory explanations that do little more than show that NEC would rather not litigate here.

The Court should also deny NEC's alternative request to transfer the action to the Northern District of Illinois. NEC attempts to cloak itself in the terms of a Purchase Agreement entered into in 2016. But NEC accepted AAEON's terms and conditions, as set forth in AAEON's quoted dated May 1, 2019 (the "May 2019 Quote"), which contains a New Jersey choice of law and forum provision. NEC can seek enforcement of the New Jersey provision, but cannot revived the Purchase Agreement's forum selection clause, which was superseded in this case.

NEC also fails to meet its burden under a traditional section 1404(a) analysis. To meet its significant burden of showing that litigation in California would be materially burdensome, NEC was required to identify witnesses, explain their materiality, offer their general testimony, and show why California would be too inconvenient for those witnesses. NEC did not offer any of that information. Nor did NEC provide evidence of any other reason for transferring under section 1404(a).

The Court should deny the Motion in all respects. If, however, the Court concludes that it lacks jurisdiction, then transfer to New Jersey is the appropriate course of action. Dismissal is not warranted under any circumstances.

## II. Summary of Pertinent Facts

In 2018 and 2019, NEC solicited a quote from AAEON for the manufacture and delivery of custom configured computing processing units to be embedded in NEC video

weintraub **tobin** chediak coleman grodin
LAW CORPORATION

displays. ECF 11-1, Yanke Decl., ¶ 11–13. Negotiations involved persons across the globe, from Taiwan and Japan to California, Illinois, and Germany. ECF 11-1, Yanke Decl., ¶¶ 12, 18; Declaration of Tim Sterling filed concurrently herewith ("Sterling Decl."), ¶¶ 5–13.

From February 2019 onward, negotiations carried on between NEC and AAEON's district sales manager in California, Tim Sterling. Sterling Decl., ¶¶ 5–13. AAEON sent a price quote from its California Customer Center to NEC in February 2019. Sterling Decl., ¶¶ 5–6. Communications continued between Mr. Sterling and NEC, leading to a revised quote—the May 2019 Quote—that Sterling sent to NEC at NEC's request. Sterling Decl., ¶¶ 7–9 and Ex. 1. The May 2019 Quote contained specific terms and conditions that NEC was required to accept, and state as much on a corresponding purchase order, to accept AAEON's offer. Sterling Decl., Ex. 1, p. 1. The May 2019 Quote included, among other things, a New Jersey choice of law and forum selection clause designating. Sterling Decl., Ex. 1, § 14.

NEC submitted at least one purchase order that AAEON rejected because NEC attempted to accept AAEON's pricing, but not AAEON's terms. Sterling Decl., ¶¶ 10–11. Accordingly, in June 2019, NEC submitted a new order (the "Purchase Order") specifically accepting AAEON's terms. Sterling Decl., ¶ 12.

Under the Purchase Order, NEC required AAEON to perform by delivering the custom processing units to NEC's facility in Rancho Dominquez, California. Sterling Decl., ¶ 13; ECF 11-1, Yanke Decl., Ex. C. This was not a negotiated term. Sterling Decl., ¶ 13. NEC unilaterally imposed that requirement on AAEON, indisputably targeting the transaction at this forum. After purporting to cancel the Purchase Order, which was non-cancellable, NEC now disclaims its self-created ties to California and also seeks to avoid the New Jersey forum selection provision.

### III.  Law and Argument

A. **The Court has specific jurisdiction over NEC because the agreement was negotiated in part in California and NEC required AAEON to perform in California, making it reasonably foreseeable the deal would have substantial economic consequence here.**

A court's personal jurisdiction over a litigant may be either general or specific. *Fed. Deposit Ins. Corp. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987). Either is

weintraub tobin chediak coleman grodin
LAW CORPORATION

sufficient. *Ibid*. At a minimum, this Court has specific jurisdiction over NEC. In the Ninth Circuit, specific jurisdiction is determined by a three-part inquiry. *Freestream Aircraft (Berm.) Ltd v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018). "[T]o determine whether a defendant has sufficient contacts with the forum to warrant the court's exercise of jurisdiction:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Ibid.*, quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ("*Schwarzenegger*").

The plaintiff bears the burden on the first two inquiries to show that jurisdiction is proper. *Schwarzenegger*, 574 F.3d at 802. "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts." *Id*. at 800. "In such cases, [courts] only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Ibid*. (internal citations omitted). "Conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Ibid*.

The evidence demonstrates that NEC purposefully structured this transaction to reach and involve California as an integral part of the transaction. AAEON has met its burden to make a prima facie showing of jurisdictional facts; whereas NEC has failed to make a compelling case that exercising jurisdiction would be unreasonable.

1. <u>NEC purposefully availed itself of the benefits and protections of California by requiring AAEON to perform in California and establishing operations in this state to deliver the AAEON components to the market.</u>

The "[p]urposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v.*

weintraub tobin chediak coleman grodin
LAW CORPORATION

*National Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988) ("*Sinatra*"). The cornerstones of purposeful availment are voluntariness and foreseeability, with the proper question being "whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). NEC purposefully availed itself of the privilege of conducting activities in California through regular communications with AAEON's district sales manager, Tim Sterling, who is based in California, and by requiring AAEON to perform in California, to wit, requiring AAEON to deliver the processing unites to NEC's facility in Rancho Dominguez. Sterling Decl., ¶ 5–13; ECF 11-1, Yanke Decl., Ex. C (NEC Purchase Order).

Specific jurisdiction exists where the defendant has engaged in "some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021) ("*Ford*"). In other words, "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Id*. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). "A defendant can thus structure its primary conduct to lessen or avoid exposure to a given State's courts." *Ford*, 141 S. Ct. at 1025. In evaluating the manner in which a defendant has structured its conduct, courts look to factors including "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985) ("*Burger King*").

For example, in *Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991) ("*Roth*") two foreign defendants (residing in Mexico City and Barcelona, respectively) moved to dismiss an action filed in the U.S. District Court for the Central District of California based on a lack of personal jurisdiction. *Id*. at 618–19. The trial court denied their motion and the Ninth Circuit affirmed that ruling. *Id*. at 618. The Ninth Circuit found two key facts about the parties' negotiations marginally weighed against a finding of purposeful availment. *Id*. at 622. First, the only in-state meetings that had taken place occurred when each defendant had briefly visited California on other business and the plaintiff sought them out. *Id*. at 621–22. Second, the plaintiff had doggedly pursued the defendants, traveling internationally to meet with them

weintraub tobin chediak coleman grodin
LAW CORPORATION

AAEON Electronics, Inc.'s Opposition to Motion to
Dismiss or Transfer

and obtain the movie rights to their book. *Ibid*. Nevertheless, the Ninth Circuit put greater weight on the foreseeable consequences of the parties' contract on California. Even though the parties had agreed to shoot the film in Brazil, the court found that there would be sufficient effect in California, due to editing, production, and advertising work, that the contract's subject would have continuing involvement with the forum. *Id*. at 622.

Similarly, the economic reality of the parties' agreement shows that NEC voluntarily and intentionally directed the parties' transaction toward California. NEC was in regular contact with AAEON's California-based employee, Tim Sterling, both during the negotiation process and after AAEON finally accepted the Purchase Order. Sterling Decl., ¶¶ 5–13. Moreover, NEC procured and maintains facilities in California, and required AAEON to perform in California by delivering the processing units to NEC's California facility in several tranches. ECF 11-1, Yanke Decl., ¶ 4 and Ex. C. Delivery in California was not a negotiated term—NEC set it unilaterally, purposefully bringing the parties' agreement into this forum. Sterling Decl., ¶ 13.

NEC not only structured the agreement to have direct effect in California, but NEC also structured the agreement to have *continuing* effect. NEC commissioned the processing units as components to be used in NEC's video displays, meaning delivery in California served as a predicate for additional economic activity in California—either through assembly into finished products or subsequent distribution for use globally. ECF 11-1, Yanke Decl., ¶¶ 4, 5, 12; Sterling Decl., ¶¶ 3–4.

In light of these facts, NEC's reliance on *Apex Construction v. Huron Manufacturing Corp.*, 506 F. Supp. 20 (E.D. Wash. 1980) ("*Apex*"), is misplaced. In *Apex*, the plaintiff (a Washington resident) purchased product from the defendant manufacturer (a California resident) and later brought suit against the manufacturer in Washington. *Id*. at 20–21. The trial court found that it lacked personal jurisdiction because the defendant had not directed any of its activities at Washington. *Id*. at 23. The plaintiff solicited the sale and concluded the purchase in California, and intended the manufactured product for projects in Idaho, Oregon, and Montana, <u>not</u> Washington. *Id*. at 22. Although the product was delivered to Washington,

weintraub tobin chediak coleman grodin
LAW CORPORATION

AAEON Electronics, Inc.'s Opposition to Motion to Dismiss or Transfer

the court found that the parties intended the transaction to be a shipment contract, meaning the manufacturer's duty was merely to deliver the goods into the hands of a common carrier *in California*. *Ibid*. To that point, the three bills of lading identified the plaintiff as the consignee, "indicat[ing] that the goods were owned by [the plaintiff] prior to entry into Washington." *Ibid*. Even if the defendant had held title to the goods until delivery in Washington, the court explained that personal jurisdiction still would not exist because it was the plaintiff's unilateral activity that brought the defendant's single contact with the forum. *Id*. at 22–23.

This case is the opposite of *Apex*, in that the defendant seeking to avoid jurisdiction is the party that insisted the transaction find its resting place in California. NEC tries to place the transaction in Illinois, by claiming that all of the witnesses, documents, and key events occurred in Illinois. ECF 11, p. 11, ll. 16–18; ECF 11-1, Yanke Decl., ¶¶ 15. In truth, NEC's evidence shows that the witnesses, documents, and key events span the globe, and NEC purposefully directed the transaction to culminate in California, at NEC's Rancho Dominguez facility, <u>not</u> in Illinois. ECF 11-1, Yanke Decl., ¶¶ 4, 5, 12 and Ex. C.

**2.** <u>AAEON's claim is related to NEC's forum activities, and NEC cannot avoid jurisdiction by breaching the agreement and preventing AAEON's performance.</u>

NEC seeks to avoid jurisdiction by focusing on whether the lawsuit "arises out of" NEC's forum-specific conduct. ECF 11, p. 10, ll. 14–23. Courts have repeatedly rejected such a causation-focused standard. Specific jurisdiction only requires "a 'connection' between a plaintiff's suit and a defendant's activities." *Ford*, 141 S. Ct. at 1026. Accordingly, a plaintiff need not show that the defendant's in-state activities *caused* the alleged injury. *Ibid*. Rather, "the rule [merely] demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum." *Ibid*. (quoting *Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773, 1780 (2017)) (emphasis in *Ford*). In this case, the lawsuit is related to NEC's contacts with California in that the transaction was carried out in parts in California and NEC required AAEON's final performance of the contract to take place in California.

Moreover, the Ninth Circuit held that personal jurisdiction existed in *Roth* despite the fact that no performance took place in that case—it was a suit for declaratory relief seeking a

10

1   declaration of the plaintiff's rights to produce the film after the parties agreed to terms in

2   principal, reflected in a signed letter, but never executed a more fulsome production

3   agreement. *Roth*, 942 F.2d at 620. Accordingly, NEC's attempt to distance the deal from

4   California by pointing out that the processing units ultimately were never delivered to NEC's

5   California facility is unavailing. ECF 11, p. 10, ll. 21–22. The key fact is that NEC structured

6   the deal to involve performance in California and the deal's impact in California was, thus,

7   foreseeable. See *Roth*, 942 F.2d 617 (pre-performance declaratory relief action where

8   personal jurisdiction found based on foreseeable performance of contract in the forum). Thus,

9   AAEON satisfied its burden of showing that the action relates to NEC's forum-related activities.

10
11  **3.  NEC has not met its burden of making a *compelling* case that this Court's exercise of jurisdiction would be unreasonable.**

12      "Once purposeful availment has been established, the forum's exercise of jurisdiction is

13  *presumptively reasonable*." *Roth*, 942 F.2d at 625 (emphasis in original). To rebut that

14  presumption, NEC "must present a **compelling case** that the exercise of jurisdiction would, in

15  fact, be unreasonable." *Ibid*. (quotation omitted) (emphasis in *Roth*). The exercise of jurisdiction

16  is presumptively reasonable here because NEC purposefully directed its activities at California.

17  Whatever NEC might argue about the location(s) of the various individuals involved in the

18  NEC/AAEON relationship, it is indisputable that NEC maintains facilities in California and

19  unilaterally selected California as the place for AAEON to perform by delivering the processing

20  units to NEC's California facility.

21      The reasonableness inquiry is designed to ensure that "jurisdictional rules may not be

22  employed in such a way as to make litigation so gravely difficult and inconvenient that a party

23  unfairly is at a severe disadvantage in comparison to his opponent." *Burger King*, 471 U.S.

24  at 478, internal quotation marks and citations omitted. NEC has not shown that litigating in

25  California—where NEC has permanent facilities and required AAEON to deliver the custom

26  units—would be so inconvenient that NEC would somehow be at a severe disadvantage

27  litigating here as opposed to New Jersey (the contractually designated forum) or even Illinois

28  (where NEC prefers to litigate).

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

1     In determining whether a compelling case has been made that the exercise of

2    jurisdiction would be unreasonable, courts evaluate: "(1) the extent of the defendant's

3    purposeful interjection into the forum state's affairs; (2) the burden on the defendant of

4    defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state;

5    (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution

6    of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and

7    effective relief; and (7) the existence of an alternative forum." *Menken v. Emm*, 503 F.3d

8    1050, 1060 (9th Cir. 2007) ("*Menken*") (internal citation omitted).

9     First, NEC directed the transaction's most significant contacts at California. In addition

10    to submitting purchase orders (only one of which was accepted) to AAEON's district sales

11    manager in California, NEC designated California as the place for AAEON's performance.

12    Sterling Decl., ¶¶ 5–13; ECF 11-1, Yanke Decl., Ex. C.

13     Second, NEC offers no facts to show how litigating in California would be burdensome.

14    NEC merely asserts that "the burden of defending itself in California would be significant."

15    ECF 11, p. 11, ll. 11–12. Apart from conclusory, and false, assertions that all of NEC's

16    witnesses and documents reside in Illinois (ECF 11, p. 11, ll. 16–18), NEC fails to identify how

17    many witnesses, the quantum of documents, and how litigation in California would be more

18    burdensome in a digital era and a dispute involving global participants than any other forum.

19    Contrary to NEC's assertion that all of its witnesses and documents are in Illinois, NEC's

20    declarant reveals that the witnesses and documents in this case are spread across the globe, in

21    Japan, Taiwan, Germany, Illinois, New Jersey, California, and possibly China. ECF 11-1,

22    Yanke Decl., ¶¶ 11–15, 17–18. In fact, NEC identifies only two witnesses other than the

23    declarant, Mr. Yanke, who were involved from Illinois, and refers to one such witness's

24    presence in Illinois in the past tense. *See* ECF 11-1, Yanke Decl., ¶ 15 ("the project was

25    managed by another employee who *was* also located in Illinois and is no longer employed by

26    NEC.") (emphasis added).

27     Additionally, NEC's conclusory assertion of burden is undercut by the fact that, unlike a

28    typical foreign defendant, NEC actually maintains permanent facilities and operations in

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

California. *See* ECF 11-1, Yanke Decl., ¶ 4. The very fact that NEC maintains a constant presence and business operation in California demonstrates NEC's willingness, and preparedness, to face potential litigation in this forum, i.e., that litigating in this forum would not be unduly burdensome. *See Sinatra*, 854 F.2d at 1199 (continuing contacts with a forum and maintaining a physical presence or agent within the forum suggests litigating in the forum would not be unduly burdensome). Regardless of whether NEC's contacts with California subject it to general jurisdiction, there can be no doubt that NEC has voluntarily accepted a material likelihood that it would be compelled to litigate in California, in some circumstances, as a result of maintaining a physical and operational presence here.

Third, NEC does not contend that any conflict exists between California, New Jersey, or Illinois in terms of sovereignty. Accordingly, this factor weighs in favor of exercising jurisdiction. *Menken*, 503 F.3d at 1060.

Fourth, California has as much an interest in the adjudication of contracts that call for performance in California as any other state has. Performance, or failure to perform, impacts California's economy and its residents. Even if California's interest in this particular dispute is minimal, this factor would be neutral, providing little if any support of NEC in its quest to make a compelling case of unreasonableness.

Fifth, California provides a more efficient forum than New Jersey[1] or Illinois. AAEON's district sales manager, who was integrally involved in the quote and purchase order process, resides in California. Moreover, as NEC concedes, most of the other significant witnesses hail from Taiwan and Japan (ECF 11-1, Yanke Decl., ¶¶ 12, 18), making California a more convenient forum for them. Other than one or two NEC witnesses, NEC offers no evidence that Illinois would be a more convenient forum. Whether litigated here or in Illinois, New Jersey law controls. See Sterling Decl., Ex. 1, §14.

--------

[1] Although NEC would have a basis for seeking transfer to New Jersey under the terms of the Quote and Purchase Order, NEC is not asking this Court to prefer New Jersey over California.

weintraub tobin chediak coleman grodin
LAW CORPORATION

Sixth, Mr. Sterling's presence in California, the fact that many witnesses reside in Taiwan and Japan, and the presence of the manufacturing facility in China all make California a more convenient and effective forum, and Los Angeles a particularly more convenient venue, than Illinois. See Sterling Decl., ¶ 3; ECF 11-1, Yanke Decl., ¶¶ 12, 14, 18.

Lastly, while Illinois might not be an unavailable forum to AAEON, it is not a demonstrably better forum.

It bears repeating that the burden at this stage is on NEC to make a **compelling case** that exercising jurisdiction would be unreasonable. *Roth*, 942 F.2d at 625. NEC has not made a compelling case. NEC unilaterally chose to target this transaction at California and offers no evidence of any real burden litigating in this forum. Many of the factors in this case are either neutral or show that exercising jurisdiction is reasonable. Even if NEC had presented evidence making it a close question, that would not be enough to defeat jurisdiction. *See ibid.* ("Appellees may be able to show that the exercise of jurisdiction might be unreasonable, but the closeness of the question manifests that they cannot do so in a compelling fashion.").

**B. If the Court finds that AAEON has not made a prima facie showing that jurisdiction is proper, the Court should grant AAEON leave to conduct limited discovery on jurisdiction.**

"[I]t is clear that a court may allow discovery to aid in determining whether it has *in personam* jurisdiction or subject matter jurisdiction." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 446 F.2d 406, 430 n. 24 (9th Cir. 1977). "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *1 v. U.S. Dept. of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quotation omitted). In the event the Court finds that AAEON's prima facie showing of jurisdiction facts is lacking, AAEON should be granted leave to conduct discovery into NEC's decision to require AAEON's performance in California, the reasons that NEC breached the agreement as they may pertain to NEC's California operations, as well as the facts surrounding NEC's California facility as they relate to this dispute.

weintraub tobin chediak coleman grodin
LAW CORPORATION

C. **NEC's alternative request to transfer the action to the Northern District of Illinois should be denied because Illinois is not the contractually agreed upon forum and transfer is not warranted under the traditional section 1404 analysis.**

1. <u>NEC agreed to litigate any claims arising out of the Purchase Order in New Jersey and would be entitled to transfer the action to New Jersey, but NEC does not seek that relief.</u>

AAEON agrees that forum selection clauses are presumptively valid and, absent exceptional circumstances, should be enforced. But NEC seeks to enforce a provision that does not apply in this case because it was superseded by AAEON's issuance of the May 2019 Quote and NEC's acceptance of AAEON's terms. The controlling forum selection clause is section 14 of the May 2019 Quote, which establishes consent to jurisdiction in New Jersey. Sterling Decl., Ex. 1, § 14. NEC, however, has not asked this Court to transfer the action to New Jersey and refused to stipulate to a transfer to New Jersey.

NEC first seeks to avoid the New Jersey provision by setting up a straw man argument around the so-called "battle of the forms." NEC claims that the Purchase Agreement and the May 2019 Quote would set up a "classic 'battle of the forms' scenario under UCC 2-207." In a false declaration of victory, NEC then declares that this is not a "battle of the forms" situation because the Purchase Agreement was not an offer to which the May 2019 Quote responded in acceptance. ECF 11, p. 13, ll. 1–9. No one would contend that the May 2019 Quote was an attempt to accept the Purchase Agreement, which in NEC's view would set up a battle of the forms situation, and AAEON certainly has never argued that the May 2019 Quote was some attempt at acceptance. The Purchase Agreement represents a discrete act of offer and acceptance years before this transaction.

What NEC fails to appreciate, deliberately or otherwise, is that *the May 2019 Quote is the offer*. It represents AAEON's offer to manufacture parts for NEC on specific terms and conditions, including the New Jersey choice of law and forum provision. Sterling Decl., ¶¶ 8–9 and Ex. 1. NEC responded to AAEON's offer—the May 2019 Quote—with a purchase order in May 2019, which AAEON rejected for not specifically accepting AAEON's terms and conditions. Sterling Decl., ¶ 10. In June 2019, NEC submitted the operative Purchase Order, specifically accepting AAEON's pricing <u>and</u> terms. Sterling Decl., ¶ 12; ECF 11-1, Yanke

AAEON Electronics, Inc.'s Opposition to Motion to Dismiss or Transfer

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

Decl., Ex. C. The Purchase Order did not contain any competing terms; rather, it accepted the May 2019 Quote's terms. Accordingly, there is not battle of the forms issue because NEC accepted AAEON's offer without attempting to interpose different terms or conditions in the Purchase Order.

Second, NEC suggests that UCC 2-204 would apply. ECF 11, p. 13, ll. 10–12. UCC 2-204 pertains to contracts where the moment of making is undetermined or where one or more terms are left open. NEC does not explain how UCC 2-204 would apply, and it does not appear to apply on the basic facts of this case.

Third, NEC contends that it never specifically accepted AAEON's terms and conditions in writing, but the evidence is otherwise. Prior to the operating Purchase Order, NEC submitted a purchase order that AAEON rejected because it accepted only AAEON's pricing, not its terms. Sterling Decl., ¶ 10. AAEON clearly communicated to NEC that it would not accept anything less than strict acceptance of the May 2019 Quote's terms. Sterling Decl., ¶ 11. Here, the 2016 Purchase Agreement provides critical context. Roughly three years after the parties entered into that agreement, AAEON offered to manufacture the processing units on different terms and rejected NEC's attempt to order while accepting only the pricing terms. The May 2019 Quote specifically provided that submitting a purchase order would constitute acceptance of all of the terms and conditions therein, and required the purchaser to demonstrate its assent to those terms by specially designating the order as "NCNR"—non-cancellable, non-refundable—in the case of custom designed units. Sterling Decl., Ex. 1, p. 1. NEC responded by submitting a new acceptance, the Purchase Order, which reflected acceptance of AAEON's pricing as well as its terms. Sterling Decl., ¶ 12; ECF 11-1, Yanke Decl., Ex. C. The terms NEC accepted include New Jersey law as the chosen law and designate New Jersey as the chosen forum for litigation. Sterling Decl., Ex. 1, § 14.

Lastly, NEC floats a waiver argument without any analysis or authority. The fact that AAEON filed in California does not mean NEC can fall back on a previous, superseded forum selection clause. As the clear beneficiary of the New Jersey forum selection provision, AAEON

16

weintraub tobin chediak coleman grodin
LAW CORPORATION

1    had the right to file in New Jersey or in any other forum where jurisdiction lies, subject only to

2    NEC's right to enforce the New Jersey forum selection clause.

3        **2.  NEC has not carried its burden, under the traditional section 1404(a) analysis, to**

4        **show that the balance of convenience strongly favors litigation in Illinois.**

5        When considering a motion to change venue under section 1404(a), courts afford

6    deference to the plaintiff's choice, even if the plaintiff does not reside in the chosen forum.

7    Citation. "Unless the balance of convenience is strongly in favor of the defendant, plaintiff's

8    choice of forum should not, or should rarely, be disturbed." *E.&J. Gallo Winery v. F. &*

9    *P.S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994) ("*Gallo Winery*"). Accordingly, a defendant

10   seeking transfer "bears a heavy burden of showing a clear balance of inconveniences to it."

11   *Ibid*.

12       Section 1404(a) provides three factors for a court to consider when evaluating a motion

13   to change venue: (1) the convenience of the parties; (2) the convenience of witnesses; and

14   (3) the interests of justice. 28 U.S.C. § 1404(a). "These factors break down to a number of

15   relevant considerations: convenience of witnesses, judicial economy, relative ease of access to

16   proof, and availability of compulsory process." *Gallo Winery*, 899 F. Supp. at 466.

17       "The convenience of witnesses is the most important factor in deciding a motion under

18   § 1404(a)." *Emplrs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir.

19   2010) ("*Emplrs Mut.*") (internal quotation omitted). "To demonstrate inconvenience, the

20   movant must (1) identify the witnesses and their locations, (2) indicate the quality or materiality

21   of their testimony; and (3) show that any such witnesses would be unwilling to come to trial,

22   that deposition testimony would be unsatisfactory, or that the use of compulsory process would

23   be necessary." *Ibid*. (internal quotations and brackets omitted). This showing must be made by

24   affidavit or declaration and must contain "a generalized statement of their anticipated

25   testimony." *Gallo Winery*, 899 F. Supp. at 466. Accordingly, courts "will not consider the

26   convenience of unidentified witnesses." *Brandon Apparel Group v. Quitman Mfg. Co.*, 42

27   F.Supp.2d 821, 834 (N.D. Ill. 1999). Moreover, the focus of the inquiry is on third-party

28   witnesses. *Ibid*. ("the convenience of employee-witnesses is generally assigned little weight.").

**weintraub tobin** chediak coleman grodin
LAW CORPORATION

NEC's motion fails at this first and most important step. NEC does not identify any of the witnesses, discuss their materiality, proffer any evidence as to what their anticipated testimony would be, or discuss any difficulty that would be experienced in obtaining their testimony or appearance at trial. What is more, NEC's passing references to unidentified persons involved in the underlying transaction do not appear to involve any third-party witnesses.

With respect to the other considerations, NEC again makes little or no showing at all. In terms of the burden of litigating in California as opposed to another forum, NEC offers no evidence of what burdens, financial or logistical, litigation in California would impose as compared to another forum. *Emplrs Mut.*, 618 F.3d at 1169. NEC also provides no evidence comparing the administrative congestion in this and alternative courts, and identifies no obstacles to a fair trial in this district. *Ibid.*

At most, NEC contends that Illinois law governs and that some efficiency might be achieved by having a court situated in Illinois applying Illinois law. There are several material flaws in NEC's argument. First, Illinois law does not govern. *Emplrs Mut.*, 618 F.3d at 1169. The May 2019 Quote, which NEC accepted by submitting the Purchase Order, provides that New Jersey law controls. Sterling Decl., Ex. 1, § 14. Second, even if Illinois law were to govern, NEC has not identified any conflicts between Illinois law and either California or New Jersey law. Absent some conflict or material difference, it is unclear why a court situated in Illinois would provide any meaningful efficiency in adjudicating the matter.

As NEC's papers make clear, this action does not concern a discrete transaction localized in Illinois. Its participants span the globe, from Taiwan and Japan, to California, Illinois, and Germany. NEC's mere preference to litigate in its home forum is insufficient to carry NEC's substantial burden under section 1404(a). The only circumstance under which the Court should transfer this action to Illinois is if the Court finds (1) that it lacks personal jurisdiction over NEC and (2) that the 2016 Purchase Agreement controls. Otherwise, the Court should retain jurisdiction or, in the absence of personal jurisdiction, transfer the action to New Jersey.

**D.** **If the Court finds that it lacks jurisdiction over NEC, the Court should transfer the action to the District of New Jersey, where NEC contractually consented to jurisdiction.**

It is error to dismiss an action where transfer to an alternative forum exists under 28 U.S.C. section 1404(a). *Bacon v. Liberty Mut. Ins. Co.*, 575 F.3d 781, 784 (8th Cir. 2009). Accordingly, if the Court finds that it lacks personal jurisdiction over NEC, the appropriate relief is to transfer the action to New Jersey, where NEC consented to litigate claims arising out or related to the May 2019 Quote and corresponding Purchase Order.[2] Sterling Decl., Ex. 1, § 14.

## IV. <u>Conclusion</u>

The Court has personal jurisdiction over NEC and the action should remain in this Court. If the Court finds otherwise, the proper course is to transfer the action. Dismissal is not the appropriate remedy under any circumstance.

Dated: August 2, 2021

Respectfully submitted,

**WEINTRAUB TOBIN** CHEDIAK COLEMAN GRODIN
Law Corporation

By:  /s/ Josiah M. Prendergast
      Josiah M. Prendergast
      State Bar No. 292840

Attorneys for Plaintiff AAEON Electronics, Inc.

---

[2] For the same reason, if the Court finds that the 2016 Purchase Agreement controls, the appropriate recourse would be to transfer to Illinois rather than dismiss the action.

AAEON Electronics, Inc.'s Opposition to Motion to
Dismiss or Transfer