Josiah M. Prendergast, State Bar No. 292840
**WEINTRAUB TOBIN** CHEDIAK COLEMAN GRODIN
Law Corporation
400 Capitol Mall, 11th Floor
Sacramento, California  95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile
Email:  jprendergast@weintraub.com

Attorneys for Plaintiff AAEON Electronics, Inc.

IN THE UNITED STATED DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AAEON Electronics, Inc., a New Jersey corporation,<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>NEC Display Solutions of America, Inc., a Delaware corporation,<br><br>　　　　　Defendant. | Case No. 2:21-CV-04532-SVW-MRW<br><br>**Declaration of Tim Sterling in Support of AAEON Electronics, Inc.'s Opposition to Defendant's Motion to Dismiss or Transfer**<br><br>Date:　　　August 23, 2021<br>Time:　　　1:30 p.m.<br>Judge:　　　Hon. Stephen V. Wilson<br>Courtroom:　10D |

I, Tim Sterling, declare as follows:

1. I make this declaration based on personal knowledge. If called as a witness, I could and would competently testify to the matters contained herein.

2. I make this declaration in opposition to the Motion to Dismiss or Transfer filed by defendant Sharp NEC Display Solutions of America, Inc. ("NEC").

3. I am a district sales manager for plaintiff AAEON Electronics, Inc. ("AAEON") based in the San Francisco Bay Area. I have held that position with AAEON since April 2015. As a district sales manager, I focus on embedded solutions for industrial computing, including,

among other things, custom designed processor units based on Intel's line of Open Pluggable Specification ("OPS") computer processing chips, which are designed for commercial video displays and digital signage.

4. This lawsuit involves an order NEC submitted to AAEON for the manufacture of certain OPS processing units.

5. In early 2019, I was asked to prepare a quote for the price and terms upon which AAEON would manufacture custom-designed processing units for NEC. Accordingly, I prepared the quote dated February 15, 2019, which is attached to the declaration of Keith Yanke (ECF 11-1) as Exhibit B. I prepared the February 15, 2019 quote while located in California. The February 15, 2019 quote indicates that it originates from AAEON's California Customer Center located in Orange, California. See Yanke Decl., ECF 11-1, Ex. B.

6. I delivered the February 15, 2019 quote to NEC's Chris Feldman, Keith Yanke, and Kirt Yanke via email, with whom I had previously exchanged some preliminary emails about the proposed order. I sent this email from California.

7. From February 2019 forward, NEC's Chris Feldman and Nick Cao emailed and called me regularly about the details of the quote and specifications for the processing units. The vast majority, if not all, of the times that NEC's employees communicated with me, I was located in California at the time of the call or email.

8. Based on changes to the specifications, and a phone conversation I had with Chris Feldman at the end of April 2019, I submitted a new price quote with terms and conditions dated May 1, 2019 (the "May 2019 Quote") to Chris Feldman via email. At that time, I informed Mr. Feldman that the processing units would take at least 12–14 weeks to manufacture, so NEC should take that into account when submitting its order.

9. Attached hereto as Exhibit 1 is a true and correct copy of the May 2019 Quote, with pricing terms redacted. I prepared the May 2019 Quote in California and sent it from California. The May 2019 Quote indicates that it originates from AAEON's California Customer Center located in Orange, California. See Ex. 1.

{3227749.DOCX:}     2     Declaration of Tim Sterling in Support of AAEON's Opposition to Motion to Dismiss or Transfer

10. In May 2019, NEC sent me a purchase order pursuant to the May 2019 Quote, but failed to comply with the express terms and conditions, specifically, NEC failed to indicate on the purchase order that the order was "NCNR," meaning non-cancellable and non-refundable. I was in California when NEC sent me the faulty purchase order.

11. On June 24, 2019, I emailed Nick Cao, NEC's supply chain manager, and informed him that NEC was required to indicate acceptance of the terms and conditions set forth in the May 2019 Quote by indicating the purchase order was "NCNR." I was in California at the time I sent this email.

12. Mr. Cao replied to me the same day with an updated purchase order, which is attached to the Declaration of Keith Yanke (ECF 11-1) as Exhibit C (the "Purchase Order"). I was in California at the time Mr. Cao submitted the Purchase Order. Contrary to Mr. Yanke's sworn statement, the Purchase Order was not submitted pursuant to the February 15, 2019 quote—the Purchase Order indicates on its face that it was submitted pursuant to the May 2019 Quote. *See* Yenke Decl., ECF 11-1, Ex. C.

13. The Purchase Order directed AAEON to deliver the processing units in two tranches to NEC's facility in Rancho Dominguez, California. *See* Yanke Decl., Ex. C. AAEON did not require that the processing units be delivered in California or ask to make delivery in California. NEC unilaterally designated its Rancho Dominguez, California facility as the place where AAEON was required to provide the processing units.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 2, 2021, in Watsonville, California.

*Tim Sterling*
Tim Sterling

Exhibit 1

# QUOTE



| | |
|---|---|
| QUOTE #: | 190215TS-02 |
| Date: | May 1, 2019 |
| Expiration: | July 30, 2019 |
| Prepared by DSM: | Tim Sterling (tims@aaeon.com) |
| Program Managert: | Jay Chaing (jayc@aaeon.com) |
| Product Manager | Harrison Liang (harrisonl@aaeon.com) |
| Sales Coordinator: | Kypi Marquez (kypi@aaeon.com) |
| Inside Sales | Mike Chen (mikec@aaeon.com) |

**Aaeon Electronics, Inc.**
California Customer Center
324 W. Blueridge Ave
Orange, CA 92865
TEL: (714) 996-1800

Please CC: orders@aaeon.com

TO: NEC Display Solutions of America Inc.
    Attn: Chris Feldman
    NEC Display Solutions of America, Inc.
    3250 Lacey Rd, Ste 500,
    Downers Grove, IL 60515

Em: cfeldman@necdisplay.com
Ph: 630.467.3118
Fx:

**Sales Terms:**
1. EX-Works China AAEON Warehouse
2. Custom configured orders are Non-Cancellable, Non-refundable (NCNR). Software, peripherals and integration fees are non-refundable. Please indicate NCNR on the P.O.
3. Credit Terms: Net 30
4. All POs over $10,000.00 require NCNR indicated on the P.O.
5. Other than Sale Terms listed, AAEON's Terms and Conditions are applicable.

**Note: Issuance of Customer Purchase Order acknowledges the acceptance of AAEON's Sale Terms and, Terms and Conditions.**

| LN | Qty | Part Number | Description | Unit Price | Line Total |
|---|---|---|---|---|---|
| 1 | 200 | RS-NPS-WLU-8565-24128 | OPS unit w/ I7-8565U, 8GB DDR4 Memory, 128G M.2 SSD, Win 10 IoT Enterprise, WiFi 802.11 AC+BT, 3 year total warranty | ▮ | ▮ |
| 2 | 200 | RS-NPS-WLU-8265-24128 | OPS unit w/ I5-8265U, 8GB DDR4 Memory, 128G M.2 SSD, Win 10 IoT Enterprise, WiFi 802.11 AC+BT, 3 year total warranty | ▮ | ▮ |
| 3 | 200 | RS-NPS-WLU-8145-24128 | OPS unit w/ I3-8145U, 8GB DDR4 Memory, 128G M.2 SSD, Win 10 IoT Enterprise, WiFi 802.11 AC+BT, 3 year total warranty | ▮ | ▮ |
| | | | | subtotal | $ 505,800.00 |
| | | | | tax | |
| | | | | TOTAL | $ 505,800.00 |

1. MOQ (Minimum Order Quantity) is 500 pcs per order which can have different models combined(i7,i5,i3). Min SKU ammout per order is 200 pcs.
2. (3) year warranty is standard (2) year warranty + (1) additional year for a total of (3) years.

Thank you for your business!

Form No.:QF 0800

# QUOTE

## AAEON Terms & Conditions

**1. Scope:**
Scope: The following terms and conditions ("Agreement") apply to the sales of all products and/or services ("Products") delivered or provided by AAEON Electronics, Inc. to the Buyer.

**2. Payment Terms & Purchase Price:**
Buyer agrees to pay the total purchase price, sales taxes, duties, freight and other applicable charges with the term indicated on the invoice which is issued to Buyer by Seller when the Products is delivered.

**3. Delivery and Inspection:**
Delivery should take place at Seller's premises unless otherwise specified in writing on the invoice. Buyer shall inspect the Products packaging and notify Seller in writing of any defects or discrepancies within 3 days upon receipt.

**4. Title and Risk of Loss:**
Title and risk of loss or damage in transit shall pass to Buyer on the date of delivery upon delivery to a common carrier.

**5. Limited Warranty:**
Seller provides 2 year limited warranty for the quality of the Products in materials and workmanship. During the warranty period, Seller will only repair or replace those Products due to manufacturing or design defect. Except for this 2 year limited warranty, Seller makes no other warranty, expressed or implied. The limited warranty only covers repairs at Seller's facilities, it does not include labor, transportation or other expenses to repair or resinstall warranted Products on site or at Buyer's premises. The limited warranty shall not apply to any Product that has been damaged due to improper installation or operation, misuse, accident, negelect and/or has been modified, repaired, or altered by anyone other than Seller's authorized personnel.

**6. Alteration, Modifications and Attachments:**
Any alterations, additions, modifications, or attachments on the Products not authorized in writing by Seller shall be solely at Buyer's expense and risk. If operation of the Products is affected anyway by alterations, additions, modifications, or attachments, the warranty shall be deemed waived by Buyer, and Seller shall have no further obligations to Buyer hereinafter.

**7. Merchandise Return Policy:**
(a) For the returning of defective or non-conforming goods, Buyer shall obtain a Return Merchandise Authorization (RMA) number from Seller. (b) Upon obtaining a RMA number., Buyer shall mark the RMA number clearly on the outside of each return package and ship it to Seller with freight prepaid. (c) All returned Products must be packed in the original packaging or in good protection from damage. Failure to do so may void warranty and Seller shall not be responsible for any loss or damage to the Products during the return. No advance replacement will be made. Replacement or repair will be made at the discretion of Seller. (d) For return for credit, Products must be returned unused and packed in the original container with complete parts, manual and accessories within 30 days from the invoice date. A percentage of the purchase price will be charged as restocking fee which is 15% of the purchase price for board level Products and 25% of the purchase price for system level Products will be charged as restocking fee, with the exception of evaluation units. (e) All the computer peripheral parts that are not manufactured, but assembled by AAEON (which include, but not limited to, internal parts such as CPUs, Fans, Memory, Hard Drives, Disk on Chip, Flash memory devices, CD ROMs, software, cables, & etc., unless specifically stated otherwise) are not returnable and carry a 2 year warranty against defects due to manufacturing or failure.

**8. Repair Charges:**
There will be a charge for the repairing of out of warranty items or damage resulting for improper use or mishandling. The charge will be based on the total labor spent plus parts, with a minimum charge of $70 for each repaired item.

Thank you for your business!

Form No.:QF 0800

# QUOTE

**9. Limitation of Liability.**
Seller shall not be liable for any consequential or incidental damages suffered by Buyer and/or any end user related to or arising out of this agreement, and/or the use or inability to use the Products, integration of the Products with equipment not provided by Seller, loss of profits and/or from any other cause whatsoever. In no event will Seller's liability for any cause of action relating to this agreement exceed amounts received by Seller from Buyer for the Product or service that is the subject of such claim or dispute. Unless otherwise agreed in writing by Seller, the Seller's Products sold hereunder are not designed nor intended for any use in mission critical, medical critical, life saving or life sustaining applications which the failure of the Products could create a situation where personal injury or death may occur.

**10. Indemnity.**
Buyer shall indemnify, defend and hold Seller harmless from all claims, damages, expenses, liabilities and losses, including without limitation, attorney's fees and costs incurred that in any way arise out of or relate to (a) the manner in which Buyer and/or any of its customers or end users use or operate the Products; (b) any personal injuries, property damages or other losses resulting or occurring from the willful or negligent acts or omissions of Buyer, its customers or end users; (c) defects or other problems with other component parts, equipment or materials produced or supplied by anyone other than Seller and that may be used with the Products; and/or (d) Buyer's transactions with its customers, end users or other parties regarding the Products.

**11. Property Rights.**
Seller shall solely own and have exclusive worldwide right, title and interest in and to all United States and foreign patents, trademarks, service marks, copyrights, trade secrets, and all other intellectual and industrial property rights in any way related to the Products, to Seller's Proprietary Rights, and to all modifications, improvements and derivative works related thereto. Title to all of Seller's Proprietary Rights embodied in the Products shall always remain with Seller, and Buyer's use thereof shall be restricted under a non-exclusive license granted by Seller. Seller hereby grants to Buyer a non-exclusive non-transferable and indivisible license to use Seller's proprietary rights only as they are embodied in the Products and for no other purpose.

**12. Export.**
Buyer shall comply with all applicable laws and regulations, including, without limitation, all of the laws and regulations of any applicable agency of the United States government responsible for the administration of the United States export control laws and regulations and the United States Foreign Corrupt Practices Act of 1977, as amended.

**13. Force Majeure.**
Seller shall not be liable for any failure to perform or other loss due to unforeseen circumstances or causes beyond its control, including without limitation acts of God, strikes, material and/or transportation shortages, natural casualties, governmental regulations, war, fire, flood, disasters and civil unrest.

**14. Applicable Law & Consent to Jurisdiction:**
This contract is entered into in County of Monmouth, New Jersey. The parties agree that this contract shall be governed and construed in accordance with the laws of the State of New Jersey and any dispute that arises under or relates to this agreement shall be resolved in the competent Courts in Monmouth County, New Jersey.

**15. Attorney fees and Costs:**
The parties agrees that the prevailing party in any litigation or other legal proceeding that arises under or relates to this agreement shall be awarded reasonable attorney fees, together with any costs and expenses, to resolve the dispute and to enforce the final judgment.

**16. Entire Agreement:**
This agreement may be modified only by a written instrument signed by the parties hereto or their duly authorized agents. Waiver by Seller of any provision hereof in one instance shall not constitute a waiver as to any other instance. All of the provisions of Section 9 and 10 of this agreement shall survive the termination of this agreement.

Thank you for your business!

Form No.:QF 0800